[Cite as *In re I.A.C.A.*, 2015-Ohio-256.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In re: | : | |
| I.A.C.A. et al., | : | No. 14AP-638 |
| | | (C.P.C. No. 12JU-768) |
| (K.C., | : | |
| | | (ACCELERATED CALENDAR) |
| Appellant). | : | |

D E C I S I O N

Rendered on January 27, 2015

*Giorgianni Law LLC,* and *Paul Giorgianni*, for appellant K.C.

*Robert J. McClaren*, for appellee Franklin County Children Services.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

TYACK, J.

{¶ 1} K.C. is appealing from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting permanent custody of two of her children to Franklin County Children Services ("FCCS").

{¶ 2} By way of background, on January 19, 2012, a complaint was filed alleging the two named children in this action were neglected and dependent. A caregiver of the children had brought them to FCCS stating she could not care for them, and the whereabouts of both parents were unknown. The alleged father was reportedly dealing drugs and had been deported to Mexico. K.C. was reportedly abusing heroin and prescription drugs, had a history of unstable living and housing, frequently left the children with relatives for long periods, and had a criminal history. The older child was

seven years old and had never been enrolled in school.  She was found to have lice.  The younger child had trouble sleeping and breathing at night.

{¶ 3}  FCCS was granted temporary custody on January 20, 2012.  A guardian ad litem ("GAL") was appointed for the children.  In her first report, the GAL noted that the younger child's teeth were so decayed that most of them needed to be removed, and that he could only eat soft foods.  A case plan was approved, adopted, and made an order of the court.

{¶ 4}  The children in question are now ten and seven.  The older child suffers from post traumatic stress disorder and other psychological issues.  The younger child also suffers from post-traumatic stress disorder.  Both children require extensive psychological therapy.

{¶ 5}  Their mother, K.C., has a long history of abusing controlled substances, including prescription medication and heroin.  Because of her drug problems, she spent time in the Delaware County jail, a community control facility, and then a halfway house.

{¶ 6}  K.C. violated the terms of her community control and thus was returned to jail from late January to March 2013.

{¶ 7}  After March 2013, K.C. was scheduled for regular drug testing, but failed to show up for over two-thirds of her scheduled tests.  Despite this, K.C. was allowed visits with her children beginning in May 2014.

{¶ 8}  A hearing was conducted on July 11, 14, and 15, 2014, and the trial court issued its decision and judgment entry on July 18, 2014.  K.C. filed a timely notice of appeal.

{¶ 9}  She assigns five errors for our consideration:

> [I.] The Juvenile Court placed the burden upon Mother to disprove FCCS's allegation that she continues to consume illegal drugs.
>
> [II.] The Juvenile Court erroneously assumed the truth of the allegations in FCCS's Complaint.
>
> [III.] The Juvenile Court erroneously assumed the truth of the guardian *ad litem's* pre-trial report.
>
> [IV.] With respect to both the sufficiency of the evidence and the manifest weight of the evidence, FCCS failed to prove

that terminating Mother's parental rights is in the best interest of the children.

[V.] Mother was denied effective assistance of counsel.

{¶ 10} A decision to award permanent custody requires the trial court to undergo a two-step process. First, a trial court must determine if any of the factors set forth in R.C. 2151.414(B)(1) apply. Here, R.C. 2151.414(B)(1)(d) provides in relevant part:

The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period.

{¶ 11} By the time the motion for permanent commitment was ready for adjudication, the children had been in the custody of FCCS for two years. Thus, R.C. 2151.414(B)(1)(d) has been satisfied. As a result, the juvenile court was focused on the second step: whether or not FCCS had shown by clear and convincing evidence that it was in the best interests of the children for permanent custody to be granted to FCCS. *Santosky v. Kramer*, 455 U.S. 745, 748 (1982); R.C. 2151.414(B)(1). The trial court found that FCCS had met that burden.

{¶ 12} In her first assignment of error, counsel for K.C. argues the trial court shifted the burden of proof to the mother to prove that she was no longer abusing drugs. Our review of the record shows that the trial court had ample evidence that K.C. continued to suffer from a controlled substance problem. K.C. had been physically detoxified by her incarcerations, but returned to abusing controlled substances after being released from custody. The Delaware County courts gave her repeated opportunities to attain sobriety, but she failed to fully benefit from the chances she was given.

{¶ 13} The juvenile court in Franklin County could look at K.C.'s conviction for possession of heroin and the failure to take advantage of the community control granted to K.C. as an indication that K.C. had not beaten her drug problem. The fact K.C. skipped most of her urine drops in recent history also could be construed as an indication that K.C. was trying to conceal her on-going drug use from the courts.

{¶ 14} When called to testify, K.C. acknowledged positive drug screens between March 13, 2013 and July 14, 2014. She acknowledged not undergoing any random drug

screens from February 25, to July 14, 2014. She agreed that she was not complying with the random drug screen portion of the case plan, but insisted she was clean and sober.

{¶ 15} The juvenile court could readily find evidence that K.C. had not stopped using controlled substances and did so without placing the burden on anyone to prove or disprove K.C.'s drug abuse. The facts clearly supported the trial court's findings in this issue.

{¶ 16} The first assignment of error is overruled.

{¶ 17} In her second assignment of error, counsel for K.C. argues the trial court assumed facts to be true that were mere allegations in the complaint filed by FCCS.

{¶ 18} On March 12, 2012, the juvenile court found the children to be neglected and dependent as a result of the information contained in the complaint. There was no appeal from this adjudication. "[A]n appeal of an adjudication order of abuse, dependency, or neglect of a child and the award of temporary custody to a children services agency pursuant to R.C. 2151.353(A)(2) must be filed within 30 days of the judgment entry pursuant to App.R. 4(A)." *In re H.F.,* 120 Ohio St.3d 499, 2008-Ohio-6810, ¶ 18.

{¶ 19} Moreover, the evidence showed that K.C. claimed she was entering a rehabilitation facility when actually she was going to jail. There was testimony that the children and the persons caring for the children did not know where to find her. Thus, it is reasonable to infer that FCCS did not know where to find her when it initially received the children.

{¶ 20} After relatives had cared for the children for months, one of them got tired of providing free care and contacted FCCS.

{¶ 21} During her absence, K.C. obviously was not seeing to the special care needs of the children.

{¶ 22} The second assignment of error presents no reversible error and is overruled.

{¶ 23} In her third assignment of error, counsel for K.C. argues the trial court relied upon an unauthenticated report by the children's guardian ad litem that was not admitted into evidence at trial.

{¶ 24} A guardian ad litem had been appointed initially to assist the court. The guardian ad litem filed a report for the benefit of the court, but did not expect the report to be used as evidence. We note a second guardian ad litem was appointed later shortly before trial, and participated in the proceedings.

{¶ 25} Again, this report was filed on March 9, 2012 prior to the adjudication of the complaint and initial order of dependency and neglect, and an appeal was not taken from that initial disposition.

{¶ 26} The third assignment of error is overruled.

{¶ 27} In her fourth assignment of error, K.C. argues that FCCS failed to prove that terminating K.C.'s parental rights was in the best interest of the children.

{¶ 28} As discussed above, a juvenile court may terminate parental rights only when there is clear and convincing evidence that termination is in the best interest of the children. *Santosky* at 748; R.C. 2151.414(B)(1).

{¶ 29} With respect to determining the best interests of the children:

> R.C. 2151.414(D) provides that, in determining the best interest of the child, the court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, out-of-home providers, and any other person who may significantly affect the child, (2) the wishes of the child, as expressed directly by the child or through the child's GAL, with due regard for the maturity of the child, (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22–month period, (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency, and (5) whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child. The factors set forth in R.C. 2151.414(E)(7) through (11) include: (1) whether the parents have been convicted of or pled guilty to various crimes, (2) whether medical treatment or food has been withheld from the child, (3) whether the parent has placed the child at a substantial risk of harm due to alcohol or drug abuse, (4) whether the parent has abandoned the child, and (5) whether the parent has had parental rights terminated with respect to a sibling of the child.

*In re R.G.,* 10th Dist. No. 12AP-748, 2013-Ohio-914, ¶ 9.

{¶ 30} There is no question that K.C. and her older child are bonded, and that the two children are bonded to each other. However, as the trial court found, "[K.C.] has also inappropriately brought male friends to visits and allowed them to freely interact with [the older child], even after knowing that [the older child] had been sexually acting out with her bother and has been in trauma therapy." (Decision, at 6.)

{¶ 31} The older child's wish is to be reunited with her mother, but this desire is somewhat ill-informed as it is based on the premise that her mother is drug free. The trial court had the opportunity to interview the child who recalled that her "mother had a lot of boyfriends whom [I.A.C.A.] did not like as they always kept mother in a room." (Decision, at 8.) The older child believes her mother to be free of drugs and thinks she is a changed person. The evidence shows that K.C. has not been able to achieve a drug free sober life, and the guardian ad litem recommended that the court not separate the children and that the court grant permanent custody for purposes of adoption.

{¶ 32} The evidence before the trial court showed that K.C.'s children have special needs. They need extensive therapy and a safe home without drugs. K.C. has not demonstrated that she can care for herself, let alone her young children. The evidence more than proved that these children needed stability and treatment K.C. cannot provide.

{¶ 33} The fourth assignment of error is overruled.

{¶ 34} In her fifth assignment of error, counsel for K.C. argues her trial counsel was ineffective in the following ways: (1) for failing during closing argument to comment upon the caseworker's double hearsay testimony about a prospective adoption placement for the children; (2) for failing during closing argument to comment upon the absence of any direct evidence of drug-test results; and (3) for all but waiving closing argument.

{¶ 35} K.C. has a right to effective assistance of counsel. R.C. 2151.352; Juv.R. 4(A); *In re C.P.,* 10th Dist. No. 08AP-1128, 2009-Ohio-2760, ¶ 56. To succeed on such a claim, K.C. must satisfy the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, K.C. must demonstrate that counsel's performance was deficient, and second, that there exists a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *In re C.P.* at ¶ 58.

{¶ 36} The record before us does not indicate that K.C.'s trial counsel failed her in any way. The trial court noted that K.C. had gone for months without attending a drug screening appointment. This refusal to be screened was a strong indication that K.C.'s drug problems continued. Pointing out the lack of positive drug test results would only serve to highlight the issue of missed drug screens. The children needed stability. No attorney could change these facts.

{¶ 37} The fifth assignment of error is overruled.

{¶ 38} All five assignments of error having been overruled, the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch is affirmed.

*Judgment affirmed.*

KLATT and DORRIAN, JJ., concur.